THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANCIS KELLEY and BERNARD KELLEY, and Each of Them, Appellants.

Third Department, March 9, 1938.

*Lewis E. Mosher* [*William B. Mahoney* of counsel], for the appellants.

*Walter B. Reynolds, District Attorney,* for the respondent.

HEFFERNAN, J. Defendants, two brothers, have appealed from a judgment of the Chemung County Court convicting them of the crime of burglary in the third degree by virtue of which they were sentenced to imprisonment in the Attica State Prison for terms of not less than ten nor more than twenty years.

The indictment in each case contains two counts. Under the first count it is charged that the defendants committed the crime of burglary in the third degree in that they " feloniously broke and entered the club building of the Patch Athletic Club, located at No. 180 E. Washington Ave., in said City of Elmira, with intent to commit therein the crime of larceny." In the second count defendants are charged with the crime of petit larceny and it is alleged that the defendants " at the same time and place mentioned in the first count of this indictment, and as a part of the same transaction, unlawfully stole and took from the possession of said Patch Athletic Club about twenty dollars in money, of the value of about twenty dollars, with intent to deprive the owner thereof, and of the use and benefit thereof, and to appropriate the same to their and each of their own use and purpose."

At the close of the testimony the trial judge, on the motion of the district attorney, dismissed the count in the indictment charging

defendants with petit larceny. Referring to this count the district attorney in his summation said: " We couldn't prove " that defendants " stole anything."

In the month of December, 1936, one Sassano and a group of his friends organized the Patch Athletic Club, which had its headquarters in a building at No. 180 E. Washington street in the city of Elmira. This building was equipped with pool tables, chairs and other furniture. The inference is clear that this building was used as a cloak by its members for various forms of petty gambling. Unquestionably the habitues of the premises were gamblers on a small scale. Shortly after the club opened a campaign was inaugurated to secure members. Apparently any one who desired to do so could obtain an admission card. In fact drivers of taxicabs were given cards for distribution to their patrons. Both defendants were members of this club and defendant Bernard Kelley was the owner of a nickel slot machine which he had brought to the premises. Sassano owned the candy, cigars, cigarettes, soft drinks and other personal property in the establishment. From the proof it is apparent that the club was open to members at all hours during the day and night. No record was ever kept of the persons to whom tickets of admission were issued.

On the night of January 1, 1937, both defendants went to the club. They were found there between two-thirty and three o'clock of the following morning by police officers of the city who testified that their attention was attracted to the building by the presence of lights and the sound of pounding. Bernard Kelley testified that he went there for the purpose of obtaining cigarettes and to extract the money from the nickel machine, and explained his brother's presence in the building by saying that shortly afterward Francis followed him there and tried to stop him from breaking the machine. It seems that this was the noise undoubtedly which attracted the attention of the police officers. Defendants were taken into custody and subsequently indicted by the grand jury on the charges of burglary and larceny.

The statute (Penal Law, § 404) defines burglary in the third degree, so far as material here, as follows:

" A person.who:

" 1. With intent to commit a crime therein, breaks and enters a building, or a room, or any part of a building; * * *

" Is guilty of burglary in the third degree."

It will be seen by reference to the definition of burglary that a felonious intent is one of the necessary elements of the crime. The intent must be proved as laid in the indictment. The breaking and

entry would, in the absence of such intent, be a bare trespass, which, however aggravated, would not be a crime. It is the criminal mind and the purpose going with the act which distinguish a criminal trespass from a mere civil injury. (*McCourt* v. *People,* 64 N. Y. 583.) The felonious intent must exist at the time of the breaking and entry, and if it is not formed in the mind of the offender until afterward there is no burglary. The entry must be made with the intent to commit a crime as distinguished from the intent to procure admission to the building. To constitute burglary either at common law or under the statute there must be a breaking of the building either actual or constructive.

In the case before us it is undisputed that both defendants were members of the club and had membership cards which entitled them to admission. Therefore, both defendants were lawfully on the premises at the time of their arrest. It is fundamental that there can be no breaking or entering a building if the person entering has the right to do so. One cannot commit the crime of burglary by breaking into his own house. There is not the slightest bit of proof in the record that either defendant broke into the building or stole any property whatsoever. In fact the prosecution conceded its inability to establish that defendants committed petit larceny. There being no proof on which the jury could base a finding that defendants had committed any crime on the premises or that they intended to commit a crime therein, there could be no burglary irrespective of how the defendants may have entered the building.

At the close of the testimony both defendants moved that the court direct a verdict of acquittal, which motion was denied and to which defendants duly excepted.

In his charge the trial judge instructed the jury that in order to find defendants guilty the prosecution was obliged to prove beyond a reasonable doubt that they " unlawfully entered this building with a criminal intent to steal property." He failed to indicate, however, to the jury just what property it was claimed defendants stole or with the theft of which they were charged. In view of the concession of the district attorney that he had no proof that defendants committed larceny it is difficult to conceive what was left for the jury's consideration on that subject. The statement of the trial judge was meaningless. In his charge the trial judge also said: " Were they [meaning defendants] in that building lawfully and did they have an innocent purpose in going there or were they in there unlawfully and for the purpose of stealing? " A moment later he said: " Did these defendants enter this building on the night in question unlawfully

with the intent to commit larceny?" We think these statements in the charge were certainly misleading in view of the fact that the question as to whether or not defendants committed larceny had already been eliminated from the case. It is quite apparent that the jury had no conception of what they were to decide because some time after they retired for deliberation they returned into court and asked this question: "There was a little misunderstanding as to what the charge was, whether it was burglary or robbery?" To that inquiry the court replied: "Burglary, third degree."

On the trial the district attorney was permitted to cross-examine one of his own witnesses as to certain testimony which the latter gave before the grand jury. Defendants' counsel asked for an opportunity to examine the minutes of the testimony of the witness in question. The court denied the request and defendants' counsel excepted. The trial judge should have required the district attorney to submit these minutes for the inspection of defendants' counsel. (*People* v. *Miller*, 257 N. Y. 54.)

It is not necessary to consider other alleged errors to which our attention is directed. There is no proof to warrant the judgments of conviction. There was no competent proof to submit to the jury on the question of burglary and defendants were entitled to a dismissal of the indictment and a directed verdict in their favor.

The judgments of conviction should be reversed, the indictments dismissed and the defendants discharged.

McNamee and Bliss, JJ., concur; Hill, P. J., and Crapser, J., dissent, with an opinion by Hill, P. J., in which Crapser, J., concurs.

Hill, P. J. (dissenting). Appellants have been convicted of burglary in the third degree, charged to have been committed in the city of Elmira. A police officer at about two-thirty o'clock in the morning, approached a building for the purpose of ascertaining if the doors were locked. He heard sounds which led him to investigate, and found a broken window in the rear, and saw the defendants in the interior, one of them attempting to break open a slot machine. He also saw a cigarette vending machine lying on the floor broken and a portion of the contents scattered about. He called another officer to his aid. The defendants ran from the building and went in different directions. Francis escaped although the officer fired one or more shots in his wake. He was arrested several days later. Bernard ceased his flight and surrendered after being fired at by another officer. The evidence would sustain a finding that defendants took some of the money from the slot machine.

A reversal is sought chiefly upon the ground that there was failure to establish unlawful entry. A witness Sassano leased the premises and he with three associates purported to conduct a club which they christened " The Patch Athletic Club." It seems that some years earlier the building had been occupied by a club having that name. Cards of admission bearing the club name were issued to habitues, and a person could receive a card by visiting the premises. Various forms of gambling were the only activities carried on. The managers were so desirous to acquire new patrons or members that they paid the fares to taxicab drivers who brought people from the uptown section of the city. The defendant Francis on one occasion had " raked the game." It is explained that this technical term means that Francis took from the money deposited upon the gaming table the amount which the proprietors received.

The People called Sassano and his associates as witnesses. The evidence which they gave was hostile and indicated that their sympathies were with the defendants. This attitude was doubtless induced through self-interest. They gave evidence tending to show that the defendants were members of the " Club," and it is argued that, therefore, they had a right to break out a window, enter the building and break open a gambling device and a vending machine to obtain money and merchandise. It is obvious from the record that the " Club " existed only in name and in fact was a subterfuge adopted by the proprietors in an attempt to safeguard themselves against criminal prosecution.

The jury was justified in refusing to believe the evidence given by the proprietors and from the facts proven to draw the irresistible inference that the defendants were committing burglary. None of the errors claimed to have been committed on the trial are sufficient to require reversal.

The judgments of conviction should be affirmed.

CRAPSER, J., concurs.

Judgments of conviction reversed on the law and facts, indictments dismissed, and defendants discharged.