## CHARLES BROOKS *v.* STATE OF MARYLAND

[No. 539, September Term, 1974.]

*Decided March 14, 1975.*

This cause was argued before MORTON, LOWE and MELVIN, JJ.

*Russell D. Karpook, Assigned Public Defender,* for appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City* and *Ralph Murdy, Assistant State's Attorney for Baltimore City* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The basic question presented in this appeal is whether an individual who enters a store while it is open to the public for business, secretes himself therein and then is apprehended after the closing hour under circumstances which indicate an intent to steal, can be convicted of storehouse breaking, Code, Art. 27, § 32.

Charles Brooks, a/k/a Charles Brice, was found guilty of breaking and entering after a non-jury trial in the Criminal Court of Baltimore (Liss, J., presiding). Sentence was set at five years under the jurisdiction of the Division of Correction.

The testimony of the three State's witnesses established that on the evening of July 28, 1973, the Two Guys department store located at 2401 Belair Road closed its doors to the public at the conclusion of its normal business day. In

the course of the daily routine, the store was completely secured from the outside, merchandise for sale within the store was appropriately secured and no unauthorized personnel had permission to enter the premises.

At approximately 2:30 a.m. on the morning of July 29, 1973, both the city police and a private security firm, A.D.T., responded to an alarm at the store. An employee of the security organization stated that although the store building was "secured from the outside," the continued sounding of alarms from inside indicated to him that someone was moving around within the building.

Officer William Childs of the Baltimore City Police Department had also arrived on the scene. He corroborated testimony that the building was, to all appearances from the exterior, secured. Along with other officers, he entered the Two Guys store and discovered appellant and two other men hiding "inside the lower shoe case inside the shoe department." A search of the store revealed that encasements of jewelry had been opened and rifles, which had been chained to a gun rack, had been forcibly removed. The officers observed this merchandise near the place the appellant was apprehended.

Appellant testified on his own behalf. His recollection of the events started around 8 p.m. on July 28, 1973, with his imbibing "[a]bout a pint and a half" of "Grand Dad" and "Bacardi Rum." Appellant then remembered proceeding toward his mother's house when two friends, John and Robert, happened along and, apparently feeling the effects of overindulgence, "I asked them if I go with them would they see that I get home safely."

The three hailed a taxi but instead of going home drove to the Two Guys department store. The store was still open, the threesome entered, appellant stating: "I went in the back and got something to eat. I was hungry and tired and I went in the shoe department and they told me to sit down, I was tired and I got in on the shelf and went to sleep."

Sometime later, after the store was closed, his two companions returned to waken him but appellant dismissed

them saying "man, don't bother me I'm sleeping." Appellant was subsequently roused from his slumber by loudspeakers barking "come out" and believing, correctly, that he was in trouble he returned to his homelike shelf in an attempt to hide.

On the basis of this record, Judge Liss found appellant guilty of storehouse breaking.

It is in this factual posture that appellant contends that "There was not sufficient evidence of the essential element of 'breaking' to convict Brooks [appellant] of storehousing breaking."

Code, Art. 27 § 32 provides:

> "Every person, his aiders, abettors and counsellors, who shall be convicted of the crime of breaking a storehouse, filling station, garage, trailer, cabin, diner, warehouse or other outhouse or into a boat in the day or night with an intent to commit murder or felony therein, or with the intent to steal, take or carry away the personal goods of another of the value of one hundred dollars ($100.00) or more therefrom, shall be guilty of a felony, and upon conviction sentenced to the penitentiary for not more than ten years."

As used in the statute, breaking is given its common law meaning. This requires either an actual or constructive breaking of the storehouse by a criminal trespass. *Reagan v. State*, 2 Md. App. 262. The appellant implicitly argues that because he entered the store premises at a time when it was open to the public for business, he entered with the consent of the owners. Thus, he argues, his entrance into the store was not by "breaking," either actually or constructively. At this point or stage in appellant's conduct, his reasoning would appear to be unassailable. His course of conduct, however, did not stop at that point. Unlike other members of the public, he did not make his departure when the store closed but remained therein in spite of the fact that any reasonable person would understand that the owner's

invitation to be present in the store terminated at the time when the store was closed for business.

It has been consistently held that where one gains entrance by trick, fraud, artifice, deception or similar means, one may be said to have constructively broken. *See,* Clark and Marshall, *A Treatise on the Law of Crimes,* 7th ed., § 13.03, pp. 995-998; Hochheimer, *Law of Crimes and Criminal Procedure,* 1st ed., § 549, p. 320; *Perkins on Criminal Law,* Ch. 3, § 1A, pp. 194-196; 2 *Wharton's Criminal Law and Procedure* (Anderson ed. 1957), §§ 414-415, pp. 38-40. Our previous decisions have recognized that this doctrine, when fairly applied, satisfies the breaking requirement of the statute. *Jones v. State,* 2 Md. App. 356, 360; *Reagan v. State, supra.*

Thus, whether or not we can term appellant's original entrance into the store to be by trick, fraud, artifice, deception or otherwise, we think it can be fairly said that appellant's failure to leave the premises when the store closed for business made his original entrance a constructive, illegal breaking and entering, *ab initio.*

There are jurisdictions which have held otherwise when confronted with a similar factual situation. *See People v. Kelley,* 253 App. Div. 430, 3 N.Y.S.2d 46 (1938); *Malloy v. State,* 58 Tex. Crim. 425, 126 S. W. 598 (1910); *Smith v. State,* 60 S. W. 668 (Tex. Cr. App. 1901); *St. Louis v. State,* 59 S. W. 889 (Tex. Cr. App. 1900). *But see Thommen v. State,* 505 S.W.2d 900 (Tex. Cr. App. 1974).

On the other hand, support for our holding is found in *Levesque v. State,* 63 Wisc. 2d 412, 217 N.W.2d 317 (1974) where the defendant entered a sandwich shop shortly before closing time, ordered a cup of coffee and secreted himself in the men's room until the shop closed. He then proceeded to ransack it and while doing so was apprehended. He argued on the appeal from his conviction for burglary that the conviction should fall because he entered the shop with the consent of the owner. In dismissing this argument, the Supreme Court of Wisconsin said, at 319-320:

"It has been broadly stated that entry into a place

while open to the general public is with consent * * *. Such entry by the general public to a building is impliedly conditioned by time, place and purpose. It is the extent and scope of the consent of the one in possession which determines the legality of the entry and presence of the public within the structure. Entry into a building means more than the passing through a door or opening; it includes the idea of presence within the building resulting from passing through the door or opening. The consent of the one in possession of a building, if he be a merchant, is impliedly conditioned by the purpose of doing business with the merchant in the area set aside for that purpose. The consent given to the public to enter is not for all things and all purposes. * * * Levesque had consent to enter the restaurant as a member of the public for the purpose of eating and drinking in the restaurant. When the restaurant closed for the night, that consent was terminated and Levesque was inside without consent; not only that, but he was in an area not open to the public. His entry *ab initio* was without consent.

* * *

"On the effect of the right to enter premises, 12 C.J.S. Burglary § 11, states: 'Entering a place where one has a right to be, although with intent to commit a crime, is not burglary; but one having a general right to be in a building may be guilty of burglary where he entered at a time or place beyond his authority.' *To this, we would add 'or remains at a time or place beyond his authority.'* " [Emphasis supplied.)

We think the view expressed in *Levesque* is a sound and better reasoned view. It has been followed in other jurisdictions. *See State v. Keys*, 419 P. 2d 943 (Ore. 1966); *State v. Pierce*, 14 Utah 2d 177, 380 P. 2d 725 (1963). *See also Annot.* 93 A.L.R.2d 531.

Accordingly, we find no merit in the contention that there was not sufficient evidence of a "breaking" to sustain appellant's conviction of the crime of "breaking and entering." That there was an intention to steal after the breaking and entering is amply demonstrated by the taking of merchandise from the jewelry showcase and the forced removal of guns from the chained gun rack.

Appellant's secondary contention, that denial of his motion for a new trial was "clearly erroneous" is without merit. The basis of his motion for a new trial was that he "had desired to have the two juvenile co-defendants testify on his behalf, but they could not be located." The trial was postponed twice, giving appellant, we think, every fair opportunity to locate the two other individuals involved in the breaking. Nor do we find that the purported statement of one of the other two men proffered by appellant's counsel at the hearing on the motion added measurably to the merits of the defense. In any event, we cannot say that denial of the motion amounted to an abuse of the trial judge's discretion. *State v. Devers and Webster*, 260 Md. 360; *Jones v. State*, 16 Md. App. 472.

*Judgment affirmed.*