## BROOKS *v.* STATE OF MARYLAND

[No. 49, September Term, 1975.]

*Decided March 3, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Russell D. Karpook,* with whom was *William F. Mosner* on the brief, for appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

Pursuant to a writ of certiorari to the Court of Special Appeals, we here review the conviction of the appellant, Charles Edward Brooks, also known as Charles Edward Brice, for storehouse breaking under Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 32. Following a non-jury trial in the Criminal Court of Baltimore (Liss, J.), Brooks was convicted of breaking the building at the Two Guys

Department Store ("Two Guys"), located at 2401 Belair Road, in Baltimore City, on July 29, 1973, with intent to feloniously steal therefrom. His conviction was affirmed by the Court of Special Appeals in *Brooks v. State*, 25 Md. App. 194, 333 A. 2d 352 (1975).

When, at about 2:30 a.m., on July 29, 1973, the burglar-alarm system in the department store was activated, representatives of the American District Telegraph Company (ADT), and patrol officers of the Baltimore City Police Department, responded. Douglas L. Kane, an ADT employee, told the trial court that upon his arrival, the building appeared "secure from the outside," but that within a matter of minutes, alarms were noted emanating from ultrasonic equipment in the area of the jewelry department and the location of the safes, indicating that "there was something moving around." Officer William Childs, of the Baltimore City Police Department, testified that from his inspection of the exterior of the building he saw "no evidence of anyone [having] gained entrance;" that from the "looks of everything on the outside, the exterior, the doors, [that] everything was secured." Over objection, he was permitted to express the conclusion that "they [had] secreted themselves inside the building." The police notified Joseph Thornton, a supervisor for "Two Guys," and he came to the premises. Because the police believed the intruders might have weapons, they armed themselves with shotguns, and accompanied by K-9 dogs, searched the store following Thornton's arrival. A number of rifles, which had been chained within a display gun rack, had been forcibly removed; several glass jewelry display cases had been broken open, and a large quantity of watches and other jewelry was discovered piled on the floor nearby. After a search of about 35 minutes, Brooks and two juveniles were detected by the dogs, secreted in separate shoe cases, about 20 feet from where the jewelry was found. When thus apprehended, the appellant was awake and uninebriated.

During the course of Officer Childs' testimony, several photographs were introduced into evidence. One photograph, taken from the exterior, showed a large cylindrical

incinerator with a metal access door, and a large metal sleeve connecting it to what was described as the incinerator room.[1] A second photograph showed a pried-open door leading from the shoe department to the incinerator room; this depicted a padlock intact in the hasp, but showed that the flap and hinge pin had been pulled from the mount which had secured it to the edge of the stile of the door — as if from force applied from without. Officer Childs testified that this door provided "a possible exit through the inside out of the building," as well as a means of ingress from the exterior to the shoe department.

It was stipulated in the trial court that if Thornton were called as a witness, he would testify that the department store was closed at the end of its regular business hours on the evening of July 28th; that at that time nothing was in disarray; that the building was completely secured, and that the merchandise therein exceeded $700,000.00 in value. It was further stipulated that his testimony would verify that the door to the incinerator room was locked, that the photographs accurately depicted the conditions observed by him and that neither the defendant nor anyone else had permission to then be upon the premises.

When the trial resumed, after a delay of several weeks, the appellant, unsuccessful in that interval in securing the appearance of the two juveniles who had been arrested with him,[2] testified as the sole witness in his behalf. As he related it, the events of the evening commenced about 8 p.m. after he had imbibed about a "pint and a half of bourbon and rum;" that, while sitting on the steps at his mother's home, he was approached by two friends — 16 and 17 years of age, respectively — and asked them "to take [him] home." Hailing a taxicab, the three, instead of going to Brooks' residence, disembarked at the Two Guys Department Store, after a ride of only six or seven blocks. After Brooks paid the

1. We note that pursuant to Maryland Code (1957, 1971 Repl. Vol.) Art. 43, § 697 (a), the Department of Health and Mental Hygiene promulgated Regulation 10.03.38.06 (c) which, effective February 21, 1971, prohibited, within Baltimore City, the use of the type of incinerator depicted; thus the incinerator had been unused for several years.

2. The record discloses that each of them had been committed to the Maryland Training School for Boys, but had "eloped" therefrom and their current whereabouts were not ascertainable.

cab fare, he went "to the back of the store and got something to eat;" his friends, who were to keep him company, told him to sit down in the shoe department. Brooks, feeling tired, got in on the shelf and went to sleep; sometime later, after the store had closed, when his companions awakened him, he dismissed them as not wishing to be disturbed. It was his testimony that when he was next roused from his slumber by his friends, he "heard a loudspeaker saying 'come out;' " sensing then that he was in trouble, he returned to the shelf in an attempt to hide.

Brooks further stated that when he "heard someone trying to get in the back door, that's what made [him] get back in the shelf;" he denied the possession of any weapons or burglary tools and denied as well any knowledge of the removal of the jewelry or guns from their respective displays — while he was asleep.

Obviously unimpressed by the account given by the appellant as to how he came to be within the store, the trial judge, in entering a verdict of guilty, stated: "I don't believe a word Mr. Brice [Brooks] said." This rejection of the appellant's credibility was further expanded when the trial court (after having obtained a pre-sentence report), imposed sentence. The trial judge in those proceedings, stated:

> "This defendant, as far as he is concerned, got on that stand and lied and committed perjury. *I don't for a minute believe his story.* I point out to you *this place was broken into and he was caught red-handed,* and there is no question about that, and instead of admitting as to what he has done, he comes in here and tries to tell me a story that he was drunk the night before and fell asleep sitting on a chair in the shoe department and *nobody saw him when they closed the place up. . . . I don't believe a word of that."* (emphasis added).

It was in this posture that the case was reviewed by the

Court of Special Appeals, where Brooks contended that "there was not sufficient evidence of the essential element of 'breaking' to convict [him] of storehouse breaking." That Court, apparently leaving unnoticed the trial court's rejection of the appellant's prevarication, and its finding that the "place was broken into," considered the question posited before it to be: "whether an individual who enters a store while it is open to the public for business, secretes himself therein and then is apprehended after the closing hour under circumstances which indicate an intent to steal, can be convicted of storehouse breaking [under Maryland] Code Art. 27, § 32." 25 Md. App. at 195, 332 A. 2d at 352.

Art. 27, § 32, provided in pertinent part:

> "Every person, his aiders, abettors and counsellors, who shall be convicted of the crime of *breaking* a storehouse, . . . warehouse or other outhouse . . . in the day or night . . . with the intent to steal, take or carry away the personal goods of another of the value of one hundred dollars ($100.00) or more therefrom, shall be guilty of a felony, . . ." (emphasis added).

The Court of Special Appeals, recognizing that the term "breaking," as used in § 32, is to be given its common law meaning, and that such breaking may be either "actual" or "constructive," as "where one gains entrance by trick, fraud, artifice, deception or similar means," concluded, in affirming the conviction, that the "appellant's failure to leave the premises when the store closed for business made his original entrance a constructive, illegal breaking and entering, *ab initio*." 25 Md. App. at 197-98, 333 A. 2d at 353-54.

We agree with the basic premise that the term "breaking," as used in Art. 27, § 32, as an element of that statutory offense, has the same meaning as it has as an element in common law burglary; and that the term "breaking" may be satisfied where it is shown that there has been an "actual" breaking, or where the breaking occurred "constructively," through an entry gained by artifice, "by fraud, [by]

conspiracy (with those within) or [by] threats." See *Williams v. State,* 205 Md. 470, 477, 109 A. 2d 89, 93 (1954); *Reagan v. State,* 2 Md. App. 262, 267-68, 234 A. 2d 278, 281 (1967); *Jones v. State,* 2 Md. App. 356, 359-60, 234 A. 2d 625, 627 (1967); *Sizemore v. State,* 10 Md. App. 682, 690, 272 A. 2d 824, 828 (1971). *See also* Perkins, *Criminal Law* (2d ed. 1969), Ch. 3, § 1A, pp. 194-95; Clark and Marshall, *A Treatise On The Law Of Crimes,* (7th ed. 1967); § 13.03, pp. 996-98; 2 *Wharton's Criminal Law and Procedure* (Anderson ed. 1957) §§ 414-15, pp. 38-40; Hochheimer, *Law of Crimes and Criminal Procedure* (2d ed. 1904) § 277, p. 311.

In concluding that the "breaking" by the appellant had been "constructive," the Court of Special Appeals drew heavily upon the holdings in *Levesque v. State,* 63 Wisc. 2d. 412, 217 N.W.2d 317 (1974), where the appellant had entered a sandwich shop shortly before closing, had secreted himself in the ceiling in the men's room, and then, after the premises had been closed, emerged from his hiding place to take money from an unlocked safe. He was apprehended by the police, hiding under a kitchen counter, with the loot in hand. The Wisconsin statute, there invoked, contained an element quite different from the "breaking" required to gratify the common law, as well as Art. 27, § 32.[3] The Court of Special Appeals also cited *State v. Keys,* 244 Ore. 606, 419 P. 2d 943 (1966), where the defendant entered public telephone booths, and "with a peavey," broke open the coin boxes and removed the monies therefrom. In affirming the defendant's conviction for violating an Oregon statute, the Supreme Court of Oregon recognized that the statute "enlarge[d] the scope of constructive breaking as known to the common law to include '[e]very unlawful entry,'" and found the phone booths to be within the protection of the statute.[4] 244 Ore. at

---

**3.** The Wisconsin statute, sec. 943.10 (1) (a) and (e), Stats., made it burglary for one "who intentionally enters any [building or dwelling, or any room within], without the consent of the person in lawful possession and with intent to steal or commit a felony therein . . ."

**4.** The Oregon statute ORS 164.220 brought within the embrace of the statutory crime of burglary "every unlawful entry of any building, *booth,* tent, railroad car, vessel, boat or other structure . . . with intent to steal or commit any felony therein . . ." (emphasis added).

610, 419 P. 2d at 945. Cited as well was *State v. Pierce*, 14 Utah 2d. 177, 380 P. 2d 725 (1963), where the defendant was found to have constructively broken into a motel by trick — the display of a fictitious driver's license and the uttering of a forged check — and then to have stolen a television set therefrom. *Compare* however *State v. Newbegin*, 25 Me. 500 (1846); *People v. Kelley*, 253 App. Div. 430, 3 N.Y.S.2d 46 (1938); *Miller v. State*, 136 Tex. Crim. 345, 125 S.W.2d 596 (1939); *Malloy v. State*, 58 Tex. Crim. 425, 126 S. W. 598 (1910); *Smith v. State*, 60 S. W. 668 (Tex. Crim. 1901); *St. Louis v. State*, 59 S. W. 889 (Tex. Crim. 1900). *See also* Annot., *Burglary — Entry With Consent*, 93 A.L.R.2d 531 (1964).

Although the reasoning of the Court of Special Appeals may have an appropriate application in a given case, in the evidentiary posture in which this case reaches us — with the finding of fact by the trial court that the "place was broken into," and the judicial recognition of the appellant's mendacity, we find here no reason to pass upon the correctness of the conclusion reached by that court that "the appellant's failure to leave the premises when the store closed for business, made his original entry a constructive, illegal breaking." We thus leave for another day, and for other factual findings, the resolution of the question: whether or not one, who enters premises lawfully, such as an invitee, and then, possessing an intent to steal, or commit a felony, manages by stealth or artifice, to remain upon the premises, after the termination of the lawfulness of his presence, can be guilty of either common law burglary, or of the statutory offense proscribed by Art. 27, § 32.

When, pursuant to Maryland Rule 772, a criminal case, tried without the intervention of a jury, comes before us as to factual findings by the trial court, our review is governed by Rule 886. *See State v. Devers*, 260 Md. 360, 272 A. 2d 794 (1971); *Greene v. State*, 229 Md. 432, 184 A. 2d 621 (1962). Upon such review, unless the finding of fact by the trial judge is shown to be clearly erroneous — with "due regard . . . to the opportunity of the lower court to judge the credibility of the witnesses" — that finding will not be

disturbed. *Tucker v. State*, 244 Md. 488, 224 A. 2d 111 (1966), *cert. denied*, 386 U. S. 1024 (1967); *Holtman v. State*, 219 Md. 512, 150 A. 2d 223 (1959). Our function is merely to decide whether there was sufficient evidence, or proper inferences from the evidence, from which the trier of fact could properly draw the conclusion of the appellant's guilt, beyond a reasonable doubt. *Johnson v. State*, 238 Md. 643, 210 A. 2d 399 (1965); *Gibson v. State*, 238 Md. 414, 209 A. 2d 242 (1965); *Howell v. State*, 233 Md. 145, 195 A. 2d 592 (1963). *See also McDuffie v. State*, 10 Md. App. 190, 268 A. 2d 590 (1970), articulating the same scope of review, under Rule 1086, when such a case is before the Court of Special Appeals.

It goes without saying, that the credibility of the witnesses was for the court, sitting without a jury, as the trier of facts. *Johnson v. State, supra; Corbin v. State*, 237 Md. 486, 206 A. 2d 809 (1965); *McDowell v. State*, 231 Md. 205, 189 A. 2d 611 (1963); hence, there was no requirement that the trial court give credibility to the exculpatory testimony of the appellant. *Bird v. State*, 231 Md. 432, 190 A. 2d 804 (1963); *Jones v. State*, 11 Md. App. 468, 275 A. 2d 508 *cert. denied*, 262 Md. 747 (1971).

Nor was the trial court required to give evidentiary weight to the opinion voiced by the ADT employee, Kane, that the building was "secure from the outside," nor to the conclusion stated by Officer Childs, that because the building appeared to him to be "secure from the outside," that the appellant, and his confederates, "had secreted themselves within the building." *See Garrison v. State*, 272 Md. 123, 321 A. 2d 767 (1974); *Dunn v. State*, 226 Md. 463, 174 A. 2d 185 (1961); *Ward v. State*, 219 Md. 559, 150 A. 2d 257 (1959). Neither of those witnesses detailed in the trial court, either the scope or extent, of the inspection they made of the exterior of the building; there was no testimony from either, that the exterior, in the incinerator area, had been at all scrutinized. Save for Officer Childs' speculation, there was no evidence, either direct or inferential, that the pried-open door, shown in the photograph, had been broken in an attempt to exit the premises. Officer Childs

acknowledged that the door was a means of ingress from the exterior of the building into the shoe department. In view of the physical evidence, as shown in the photographs, and the trial court's rejection, on grounds of credibility, of Brooks' account, the trier of fact was not required to accept such opinion evidence as a probative basis for a finding that the appellant had entered the department store as a business invitee and had secreted himself therein before closing hours.

In *Dorsey v. State*, 231 Md. 278, 189 A. 2d 623 (1963), our predecessors, in finding that there had been an "actual breaking," by the opening of closed shutters, to satisfy that element in a conviction for burglary, stated:

> "Hochheimer, *Criminal Law* (2d Ed.), § 277, p. 310, states: 'Actual breaking means unloosing, removing or displacing any covering or fastening of the premises. It may consist of lifting a latch, drawing a bolt, raising an unfastened window, turning a key or knob, pushing open a door kept closed merely by its own weight.' " 231 Md. at 280, 189 A. 2d at 624.

*See also Sparkman v. State*, 3 Md. App. 527, 532, 240 A. 2d 328, 331 (1968).

Upon our review of the record, pursuant to Rule 886, we are satisfied that there was evidence, and the proper inferences which could rationally be drawn by the trial court from that evidence, that an "actual" breaking of a "fastening of the premises," which was intact when the store closed, had taken place when the door leading to the shoe department had been pried open. There was further evidence from the asportation of the rifles and jewelry from the places where they had been respectively displayed, that the appellant, who was characterized by the trial court as "caught red-handed," possessed an intent to steal from the department store goods of the value of more than $100.00. We are thus satisfied that the trial court could fairly find, beyond a reasonable doubt, that the appellant was guilty of violating Art. 27, § 32. For these reasons, and not

upon a basis that the appellant committed a "constructive" breaking, we affirm his conviction.

*Judgment of the Court of Special Appeals affirmed; appellant to pay costs.*