# WILLIAM FRANCIS REAGAN *v.* STATE OF MARYLAND

[No. 293, Initial Term, 1967.]

*Decided October 24, 1967.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Orie Seltzer,* with whom were *Theodore E. Breault* and *Herbert P. Suskind* on the brief, for appellant.

*William B. Whiteford, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Vincent J. Femia, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On October 4, 1966 the appellant was convicted by a jury in the Circuit Court for Prince George's County, Judge Ralph W. Powers presiding, of breaking a dwelling house with intent to steal and grand larceny. He was sentenced to a term of 10 years on the housebreaking offense and to a term of 10 years on the larceny offense, the sentences to run concurrently.

Motions for judgments of acquittal on the housebreaking and larceny counts were made and denied. On this appeal the appellant contends that the court erred in denying the motions.

When a case is tried before a jury, and the point is properly raised, as it was here by the motions, this Court determines the sufficiency of the evidence to take the case to the jury. In order for us to reverse a judgment entered on a verdict of a jury for insufficiency of the evidence it is necessary that there be no legally sufficient evidence, or inferences therefrom, on which the jury could find the defendant guilty beyond a reasonable doubt. *Culver v. State,* 1 Md. App. 406.

Chester E. Babylon testified that he resided at 5428 85th Avenue, Apt. 1, Lanham, Maryland with his wife and that both of them work. The entrance of the apartment building, leading to their apartment, which was on the ground or basement floor, also led to six other apartments. From this entrance there were stairs going down and the door to their apartment was the first one on the left hand side as "you go down the stairs." A door

to another apartment was beside the door to their apartment and, in this area, there was also a door into a storage and utility room. On April 26, 1966 Babylon arrived home about 5:55 P.M. and "I noticed that my Westinghouse stereo was missing." It was a portable stereo in a brown leather case with a carrying handle, broken on one side, and weighing about 75 pounds. The witness indicated the size but the record is silent as to the dimensions indicated. He paid about $130 for it new and it was now worth about $75. The following articles were also "missing": a small electric can opener, white or light beige in color valued at $13; a Zenith table model radio, with a white face and very light blue cabinet, valued at $20; an electric blender with a chrome base valued at $20 to $25; a small Japanese make transistor radio, black case, valued at $15; photographic equipment valued in excess of $150 consisting of three cameras (one a German make slide camera, one a Kodak Signet slide camera and the third a Polaroid Swinger), an electric light meter, a set of telephoto and wide angle lenses, a flash attachment, a carrying case and a slide projector; a coin collection valued at $75; a portable sewing machine about the same size as the stereo, in a beige or brown case, but a lighter brown than the stereo, with a carrying handle, valued at $125, and a clock radio, light gray and medium blue in color valued at "a few dollars." He had left the apartment that day about 7:25 A.M. It was not clear from the testimony, but the implication was that he left the apartment with his wife and returned with her.

Mrs. Janet L. Briercheck testified that she lived in an apartment on the second floor, above the apartment of Babylon. She was asked by the State if, on April 26, 1966, she had seen any of the three men sitting at the counsel table. She replied that she had—the middle one. The transcript then reads:

"Q. Would you point him out?
A. (Indicating).
Q. You are referring to the gentleman wearing glasses?
A. Yes."

The record is silent at this point as to the identity of the man

she pointed out. She said that she did not know his name when she saw him on April 26th but knew it at the trial, but she was not asked and did not state his name. She had never seen him before April 26th. She saw him on that date about 9:30 A.M. coming up the steps leading to the basement (first floor) apartments and she stepped aside to let him pass because he was carrying articles. On direct examination she said she saw him coming out of the apartment on the left but when cross-examined and asked if she saw him emerge from the Babylon apartment she said, "I saw him coming up the steps." [1] She testified that he was carrying, "a light brown case with a handle and a white appliance under his arm, it had a white facing on it. It was a radio." On further questioning she said the appliance "may have been a radio, or a can opener or something like that. He had it under his arm. It was white, I could see white." He was carrying the light brown or beige case by the handle and it appeared to her to be a stereo. She indicated the size but the record is silent as to the dimensions indicated. She saw the man go to his car, a red fastback Mustang, and put the articles on the back seat under a white sheet or blanket. She went to her apartment and from the window saw him coming out of the apartment building again with some articles which he also placed on the back seat under the covering. She could not describe these articles. He went back into the building again and when she next looked out the window he was getting in his car. He then drove away. She observed the first two letters, EA, and one number, which she believed to be 9, of the license tags on the car. She next saw the man the following day when she identified him at the police station.

Officer John Mumaw identified the appellant at the trial as the "defendant seated in the middle of these three gentlemen" (apparently the same man pointed out by Mrs. Briercheck) and said he saw him on April 28th operating a "red late model Mustang fastback, Maryland license registration EA 9793." There was no other evidence proffered by the State and none by the appellant.

---

1. Considering the testimony in its entire context, it is apparent the witness did not see the appellant actually emerge from the Babylon apartment.

Burglary, at common law, is the breaking and entering of the dwelling house of another, in the nighttime, with the intent to commit a felony therein. *Hochheimer, Law of Crimes and Criminal Procedure,* 1st Ed., §547, p.319. Maryland Code (1967 Replacement Volume) Art. 27, §29 does not attempt to define burglary but merely fixes the penalty. *McGraw v. State,* 234 Md. 273. Section 30, as amended in 1965, consists of two sub-sections. Sub-section (a) provides that "Every person, his aiders, abettors and counsellors, who shall break and enter any dwelling house in the nighttime with the intent to steal, take or carry away the personal goods of another of any value therefrom shall be deemed a felon, and shall be guilty of the crime of burglary." Sub-section (b) provides that "Any person, his aiders, abettors and counsellors, who shall be convicted of the crime of breaking a dwelling house in the daytime with intent to commit murder or felony therein, or with intent to steal, take or carry away the personal goods of another of any value therefrom shall be guilty of a felony * * *." Although sub-section (b) does not make the crime "burglary," a "breaking" is a necessary element of the crime proscribed as it is in both common-law burglary and by the provisions of sub-section (a).[2] While the definition and analysis of burglary at common law does not necessarily apply to statutory housebreakings, such statutes must be construed in the light of the common law. *Clark and Marshall, Crimes,* 6th Ed., §13:00, p. 871. Thus when the word "breaking" is employed in such a statute, it is to be understood in its common-law sense. *Perkins on Criminal Law* (University Textbook Series) Ch.3, §1, H, p.170. At common-law, the breaking, actual or constructive, requires a break of the dwelling by trespass, but this is distinguished from an entrance by a mere trespass.

> "Actual breaking means the unloosing, removing or displacing of any covering or fastening of the premises. It may consist of the lifting of a latch or drawing of a bolt; the raising of an unfastened window;

---

**2.** Sub-section (a), as in common-law burglary, specifies a breaking and entering. Sub-section (b) requires a breaking but makes no specific mention of an entering.

the turning of a key; the turning of a knob, or the pushing open of a closed door, so kept merely by its own weight. Constructive breaking occurs, whenever an entrance is obtained by intimidation or artifice * * *." *Hochheimer, supra,* §549, p.320. See also *Clark and Marshall, supra,* §13:13, p.877-884; *Perkins, supra,* Ch.3, §1, A, p.149-155.

So it is not a breaking to enter through an open door or window or if the one entering had authority to do so at that particular time. See *Dorsey v. State,* 231 Md. 278.

In the instant case the record is devoid of any evidence that a breaking occurred, either actual or constructive. Even assuming that Babylon was the last to leave the apartment or that he and his wife left together, there was no evidence that the doors and windows of the apartment were locked or even closed. Assuming that he was the first to arrive home, or that he and his wife arrived together, there is no evidence that the door or windows were then open or that there had been a breaking of any kind whatsoever. Nor was the testimony of Mrs. Briercheck helpful in this respect. She saw the appellant coming up the steps but did not see him emerge from the Babylon apartment.[3] She did not see him enter the Babylon apartment. There is nothing to show that the presence of the appellant in the apartment building proper constituted a trespass and that the general public did not have access thereto. While possession of recently stolen articles from a burglarized dwelling may be sufficient to permit a rational inference that the possessor was the burglar (*Boggs v. State,* 228 Md. 168), we do not think that the mere possession of recently stolen articles is sufficient to permit a rational inference that there was a breaking of the dwelling from which they were stolen, in the absence of any evidence that there was an actual or constructive breaking of that dwelling. We find that the trial judge was in error in not granting the motion for judgment of acquittal as to the first

---

3. *Hochheimer, supra,* §549, p.321 states, "Breaking out of a house is not a burglarious breaking." See also *Clark and Marshall, supra,* §13:03, p.883. But we need not here decide this in the absence of evidence that the appellant "broke" out.

count of the indictment charging a felonious breaking with intent to steal.[4]

Larceny is the wrongful and fraudulent taking and removal of goods or chattels from the possession of another against his will, with intent to deprive the person entitled thereto of his ownership therein. *Hochheimer, supra,* §690, p. 409; *Fletcher v. State,* 231 Md. 190. With regard to the conviction of grand larceny in the instant case, this Court must determine whether there was any legally sufficient evidence or inferences therefrom:

1) that there was a wrongful and fraudulent taking and removal of Babylon's goods;

2) that the appellant was the thief.

The testimony of Babylon was that a few minutes after he arrived home he noticed that his stereo was "missing" and further investigation disclosed other items, which he described, were "missing." We have noted that there was no direct evidence that his apartment had been broken into on April 26th.

---

4. The first count of the indictment presented that the appellant "the dwelling house of one Chester E. Babylon there situate, feloniously did break with intent to commit a certain felony there and therein, to wit: with intent then and there certain goods and chattels in the said dwelling house then and there being found, then and there feloniously to steal * * *." The count does not charge that the breaking was in the daytime, an element specified in Maryland Code (1967 Replacement Volume) Art.27, §30 (b). Section 31, giving a sufficient form of the indictment for burglary, does not require that the words "in the nighttime" be used, but contains the words "feloniously committed burglary." That the breaking be in the nighttime is inherent in the crime of burglary, both at common-law and under §30 (a) and thus the statutory form of the indictment sufficiently informs the accused of that crime. However, the form of indictment set forth in §31 is not applicable to §30 (b) because the crime proscribed in that subsection is not burglary. In the trial court the appellant made no objection to the form or sufficiency of the indictment nor does he do so on this appeal. As the question whether, by the failure to charge the breaking was in the daytime, there was omitted in the indictment an essential element of the offense intended to be charged, thus rendering it defective, is not properly before us, we do not decide it. Maryland Rules, 1085, 1031 c 2. See *Putnam v. State,* 234 Md. 537.

Babylon did not state when he last saw the missing articles or whether they had been recently in his possession or that they had been taken against his will or that he had not given the appellant or some one else permission to take them. While the bald statement that the articles were "missing" may support an implication that they were wrongfully and fraudulently taken, we do not think that it is sufficient, under the circumstances here present, for an inference that they were so taken. In reaching this conclusion we do not isolate the testimony of Babylon but consider all of the evidence. We think it clear that the appellant was the man seen by Mrs. Briercheck in the apartment building on April 26th. It has been established that the possession of recently stolen goods gives rise to a presumption that the possessor was the thief. *Musgrove v. State,* 1 Md. App. 540. To raise this presumption here, there must be legally sufficient evidence that the appellant was in possession of such goods. But even if it is assumed that the goods described by Babylon as "missing" were, in fact, recently stolen, the only way to determine that the articles seen in the possession of the appellant were some of the stolen goods was by a comparison of the descriptions of them given by Babylon and Mrs. Briercheck since none of the articles alleged to have been stolen were admitted in evidence.[5] Babylon described a Westinghouse stereo, portable, in a brown leather case, quite large, weighing about 75 pounds with a strap carrying handle, one end of which was torn loose from the case. In carrying it by the handle, it would dangle from one end of the strap. Mrs. Briercheck saw the appellant carrying a light brown or beige case by the handle. She said it appeared to be a portable stereo and that there was nothing wrong with the handle. She did not observe the make. Babylon also described a missing portable sewing machine, about the same size as the stereo. It was in a light brown or beige case with a carrying handle. While it appears possible that what Mrs. Briercheck saw the appellant carrying was the sewing machine, we cannot say that this was a rational inference from that

5. We note from the record that a motion to quash a search warrant and suppress evidence seized thereunder was granted by the lower court before the trial.

evidence and not merely conjecture. Babylon also described a can opener and table model radio. The can opener was small, "a real light color"—white or beige. The radio was in a very light blue cabinet with a white face. The only other article Mrs. Briercheck saw the appellant carrying, which she could in any way describe, was "a white appliance under his arm. It had a white facing on it. It was a radio." Asked to describe it as detailed as she could she replied, "It was just a white appliance. It may have been a radio * * * or a can opener or something like that * * * It was white, I could see white." While this evidence may have enabled the jury to speculate that what Mrs. Briercheck saw was the can opener or radio described by Babylon, we do not feel that it was legally sufficient to show directly or by inference that it was either one. The presence of the appellant in the apartment house on the stairs leading to the Babylon apartment and his actions in carrying articles out of the building and placing them under a cover in the back of his car lead to a strong possibility that he was the thief, but, on the record before us, we must hold that the trial judge erred in not granting the motion for judgment of acquittal as to the second count.

*Judgments reversed: case remanded for a new trial.*