# ALLEN R. REED *v.* STATE OF MARYLAND

[No. 422, September Term, 1968.]

*Decided June 6, 1969.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Alexander R. Martick* for appellant.

*James L. Bundy, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Charles
E. Moylan, Jr., State's Attorney for Baltimore City,* and
*Barrett W. Freedlander, Assistant State's Attorney for
Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was charged under two separate indictments with (1) common law assault upon Shirley Phillips on August 13, 1968, and (2) with having attempted, on August 17, 1968, to break and enter the dwelling house of Robert L. Phillips "with intent then and there the goods and chattels, monies and properties of the said Robert L. Phillips, in the same dwelling house, * * * feloniously to steal, take and carry away * * *." [1] The appellant was convicted of both offenses by the court sitting without a jury and was sentenced to two consecutive two-year terms under the jurisdiction of the Department of Correction. Appellant contends on this appeal that the evidence was not legally sufficient to support his conviction for attempted breaking and entering in that the State failed to prove either the attempt to break or that he had the requisite larcenous intent, as charged in the indictment. [2]

There was evidence adduced at the trial showing that Shirley Phillips, the daughter of Esther and Robert Phillips, had for some time been dating the appellant, who lived around the corner from the Phillipses; that on August 13, 1968, the appellant assaulted Shirley with a hammer, as a result of which a warrant had been obtained on August 15 for his arrest; that on the 15th, appellant was observed by Mrs. Phillips smashing her husband's car window; that appellant was thereafter observed by Mrs. Phillips on August 16 in a drunken condition on the street, and later that night he phoned her and said "you had a warrant out for me, didn't you," and that "you are all going to pay for it, you watch and see." There was also some indication from the evidence that an attempt had been made to set a fire in the cellar of the Phillips' home and that appellant was suspected by the Phillipses of that offense.

Esther Phillips testified that at approximately 1:30

---

1. See Maryland Code, Article 27, Section 30(a).
2. No appeal was taken from the assault conviction.

a.m. on August 17 she was home watching television when she heard a "racking to the door" which "got worsey and worsey" as she listened. Mrs. Phillips awakened her sleeping husband.

Mr. Phillips testified that after his wife awakened him he got his pistol and fired from four to seven shots through the closed door; that he "had an idea" at whom he was shooting and upon investigation he observed appellant running from his porch. Phillips testified that there were "marks" on the door near the latch.

While both Mr. and Mrs. Phillips testified that they did not hear the doorbell ring, the investigating police officer, William Burch, testified that Mr. Phillips told him that appellant had rung the bell and when no one answered, he applied force to the door by pushing on it, at which time he, Mr. Phillips, fired through the door. Officer Burch further testified that he observed no jimmy marks on the door, and that appellant had called the police for assistance immediately after the shooting.

Appellant testified that he had known Shirley Phillips for 8½ months prior to August 17; that when he heard about the outstanding warrant for his arrest, he went to the Phillips' home about 1:00 a.m. and rang the bell, after which he sat on the side of the porch waiting for a reply; and that the shots grazed his chest sideways as he sat on the floor of the porch. He testified that his purpose in going to the Phillips' home was to come to some agreement about a fire in the Phillips' cellar and to tell Mr. and Mrs. Phillips that he would not see their daughter any more if they wouldn't press the warrant. Appellant testified that he did not realize it was so late when he went to the Phillips' home—that he was on his way home when he stopped there, the Phillips' home being just around the corner from his own home.

In finding appellant guilty, the court found as a fact that appellant had rung the doorbell of the Phillips' home; that he didn't try to jimmy the door; but that he did push on it against the lock. The court found from the evidence that appellant was very angry at Mr. and Mrs. Phillips

and their daughter Shirley; that he had smashed the window of the Phillips' car, assaulted Shirley, and threatened Mrs. Phillips. From these facts and the inferences to be drawn therefrom, the court concluded that appellant attempted to break into the Phillips' home. The court further stated that it disbelieved appellant's explanation for stopping at the Phillips' home, and found as a fact that appellant harbored a "definite spirit of vengefulness" against the Phillips' family and "that he was trying to break in at 1 o'clock in the morning to gain some revenge or satisfaction from having been turned down by the young lady." The court made no finding, one way or the other, on the question of whether appellant entertained a larcenous intent when attempting to gain entry to the Phillips' home.

As heretofore indicated, it appears clear from the record that appellant was charged with an attempt to commit the statutory offense proscribed by Maryland Code, Article 27, Section 30 (a), *viz.*, an attempt to break and enter a dwelling house *with the intent to steal goods of any value therefrom*. An attempt to commit a crime consists of an intention to commit it, the performance of some act towards its commission and the failure to consummate the offense. *Boone v. State*, 2 Md. App. 80. It was thus essential for the State to show that appellant attempted to break and enter the Phillips' home with a larcenous intent. While there was direct evidence that appellant pushed on the door, from which it might be inferred that he attempted to break into the Phillips' home, there was no direct evidence that appellant's intent in attempting to enter the house was to commit a larceny on the premises. Of course, finding the requisite intent to steal is never a precise process, for intention is subjective and it must therefore be inferred from the circumstances of the case, if it is found at all. *Yopps v. State*, 234 Md. 216, 220; *Irving v. State*, 230 Md. 364; *Radcliffe v. State*, 6 Md. App. 285; *Johnson v. State*, 5 Md. App. 540. While the State need not prove the larcenous intent by direct evidence, it has been held that there must

be proof of some fact or circumstance or act or declaration of the accused in addition to the proof of the mere breaking and entry or, as here, the attempt to break and enter, from which the trier of fact can find the requisite intent; but the trier of fact can only draw reasonable inferences in an effort to discover the intent of the intruder. See *Felkner v. State,* 218 Md. 300, 307-308.

In view of the fact that the trial judge believed that appellant rang the doorbell of the Phillips' home before pushing on the door and also believed the testimony of the police officer that there were no jimmy marks on the door, we think he was clearly erroneous in concluding that appellant's intention was to steal from the Phillips' home, particularly since he found as a fact that appellant's purpose in attempting entry was "to gain some revenge or satisfaction from having been turned down by the young lady." In so concluding, we need not decide whether the evidence better supports the inference that appellant's intent in attempting to enter the Phillips' home was to physically harm the members of the Phillips' family, or their property. We simply hold that on the record before us, there was no evidence legally sufficient, or rational inferences drawable therefrom, from which the trier of fact could properly conclude that appellant attempted entry into the Phillips' home with the intent to steal goods therefrom of any value.

*Judgment reversed; case remanded for a new trial.*