# CLAUDE C. MARTIN *v.* STATE OF MARYLAND

[No. 10, September Term, 1970.]

*Decided October 6, 1970.*

The cause was argued before MURPHY, C.J., and ORTH and THOMPSON, JJ.

*Robert E. Broyles* (*Nelson R. Kandel* and *Josef E. Rosenblatt* on the brief) for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph B. Harlan* and *Sandra F. O'Connor, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

In this jurisdiction burglary is the breaking and entering of the dwelling house of another in the nighttime with an intent to commit a felony or with an intent to commit the misdemeanor of petit larceny. For Maryland not only recognizes the offense of common law burglary —such breaking and entering with an intent to commit a felony—but also, by legislative enactment, has designated as burglary such a breaking and entering with the intent to steal the personal goods of another of any value. Code, Art. 27, § 30 (a). See *Reagan v. State,* 4 Md. App. 590 and *Reagan v. State,* 2 Md. App. 262. The penalty for burglary, both common law and statutory, is provided by Code, Art. 27, § 29.[1]

Claude C. Martin (appellant) and William R. Martin, his brother, were jointly indicted on a charge of committing burglary on the dwelling of Joseph W. Sachs at 3411 Royce Avenue and were jointly tried at a court trial in the Criminal Court of Baltimore. Each was convicted.

---

1. The breaking of a dwelling in the daytime as proscribed by Code, Art. 27, § 30 (b) and the breaking of outhouses not within the definition of dwellings, as proscribed by Code, Art. 27, §§ 32, 33 and 342, do not constitute the crime of burglary. The penalties are separately fixed for these offenses and are not covered by § 29. Nor is the formula for indictment or warrant for burglary prescribed by § 31 applicable to them.

Appellant claims that the evidence was not sufficient to sustain his conviction.[2]

The elements of burglary are (1) the dwelling of another, (2) the breach, (3) the entry, (4) the nighttime, and (5) the burglarious intent. Proof of these elements establish the *corpus delicti* of burglary. Here the evidence in law was sufficient to establish the *corpus delicti*. Sidney Sachs, the son of Joseph W. Sachs, testified that his father was the owner of the dwelling at 3411 Royce Avenue and it was shown that on 13 January 1969, when the crime was committed, the property was entitled in the names of Joseph Sachs and Cecelia Sachs, his wife, by deed duly recorded among the Land Records of Baltimore City. See *Melia and Shelhorse v. State*, 5 Md. App. 354; *Small v. State*, 7 Md. App. 147. It is clear that the dwelling was of one other than appellant or his brother. That the dwelling was broken was not disputed. Officer Edward Hogan of the Baltimore City Police Department "checked out" all entrances and exits of the dwelling about 7:45 P.M. on 13 January and found them secure. At 11:16 P.M. he discovered the front door ajar and a window in it broken. See *Sparkman v. State*, 3 Md. App. 527. That the dwelling was entered was shown by evidence that goods within the dwelling had been removed and by the testimony of the defendants that a man named Tony had gone in the house. See *O'Brien v. State*, 1 Md. App. 94. That the breaking and entering was in the nighttime was obvious since it was between 7:45 P.M. and 11:16 P.M. on 13 January 1969; by the testimony of Wil-

2. In the question presented he asks if the trial court erred in denying his motion for judgment of acquittal at the close of the State's case and at the close of all the evidence. As we have pointed out on numerous occasions, by offering evidence, as appellant here did, an accused withdraws a motion for judgment of acquittal made at the close of the evidence offered by the State and the propriety of the denial of that motion is not before us. Maryland Rule 755 (b). In any event since the case here was not tried by a jury, our authority to review the sufficiency of the evidence is not dependent upon the denial of a motion for judgment of acquittal. We review the sufficiency of the evidence in a non-jury case when the question is presented on appeal and determine whether or not the judgment of the court was clearly erroneous under Rule 1086. See *Williams v. State*, 5 Md. App. 450.

liam R. Martin the entry was about 10:30 or 11:00 P.M.
See *Wiggins v. State,* 4 Md. App. 95, footnote 9. That the
breaking and entering was with a burglarious intent was
shown by evidence that the personal property of the
owner of the dwelling had in fact been stolen therefrom.
See *Johnson v. State,* 5 Md. App. 540.

The *corpus delicti* proved, there remained to be estab-
lished that appellant was a principal in the first or sec-
ond degree to the burglary. Evidence that he was the
criminal agent was provided by the inference arising from
his exclusive possession of recently stolen property. When
Officer Hogan, responding to a call, went back to the
dwelling at 11:16 P.M. and discovered the front door had
been broken, appellant's automobile was parked in front
of the premises with the trunk and doors open. A televi-
sion set was in the trunk, the spare tire having been re-
moved therefrom and placed on the back seat. On the
front seat was a typewriter, a flat iron and two clocks. Ap-
pellant and his brother were standing by the front door
of the automobile. Appellant told the officer that his sis-
ter lived in the house and that he was moving her.[3] There
was also mention of a "third party" who was supposed to
be inside the house. The police made a thorough check of
the dwelling. No one was found in the house. All the win-
dows and doors except the front door were locked. At the
trial appellant and his brother offered an explanation of
their possession of the property freshly stolen. They said
that a "fellow" William "usually drank with", known to
him only as Tony, was out of work on 13 January when
they met in a bar. Tony wanted to move a few things. Wil-
liam testified, "I knew my brother had transportation to
make money. He [Tony] was going to pay us ten dollars."
He got his brother and they went to 3411 Royce Avenue
where "as far as he was concerned", Tony lived. Tony
went into the house through the front door. He did not
know whether Tony had a key or not—"all I know is the

---

**3.** At first Hogan testified that appellant said he was "moving
a friend." He later corrected this after refreshing his recollection
from his report.

door went open." He heard no glass break and saw no broken window. Tony came out with a television set and William helped him carry it to the car. Appellant testified that he was in a bar when his brother asked if he "would do a favor for a few minutes. * * * This guy wanted to move a few things around the corner. He said he would pay us. I said, all right, I got company in the bar, but I didn't want to be too long. So we got in the car * * * with this guy my brother knowed." Appellant drove the car to 3411 Royce Avenue. "Well, I was sitting in the car right behind the wheel waiting, when they got out, and come out and he went out and called my brother to help him. I was still sitting in the car when they come down with the T.V. that's when I got out of the car and opened the trunk to put the T.V. in. So, he goes back in the house, and then me and my brother tried to put the T.V. in the trunk. So, I takes the tire out and put it in the back seat. This way the T.V. was in the back of the car, in the trunk." The trial court did not accept the explanation offered, saying, "I can't believe either of the defendants, and their explanation of what took place." The credibility of the witnesses was a matter for the court as the trier of fact. *Cook v. State,* 9 Md. App. 214. Since appellant did not meet the burden of giving an explanation which the court found to be reasonable of how he came into possession of the lately stolen goods, see *Graham v. State,* 6 Md. App. 458, the inference arising from his exclusive possession [4] of the goods was strong enough to establish his criminal agency and, the *corpus delicti* having been proved, to sustain the conviction of burglary as charged. *Makins v. State,* 6 Md. App. 466. Since the evidence in law was sufficient to sustain the conviction, we cannot say that the trial court was clearly erroneous in its judgment and we may not set it aside.

Appellant argues that the State had the burden of proving that none of appellant or his brother or Tony had permission of the owner of the dwelling to enter it. Joseph

---

4. Two or more persons may be in "exclusive possession" of the same goods. See *Grimes v. State,* 4 Md. App. 607.

Sachs and his wife were out of the State and did not testify at the trial. His son did not know whether his parents had given anyone permission to enter the house. Of course, breaking, as an element of burglary, requires a breach of the dwelling made by a trespass. There is no "breaking" if a person has a right to enter or if he enters with the consent of the owner. *Perkins on Criminal Law,* 2d Ed., p. 195; Clark and Marshall, *Law of Crimes,* 7th Ed., § 13.03, pp. 1000-1001. The trial court found as a fact: "There was no permission given by anyone to enter this house." We think a finding that the breaking was trespassory was a rational inference from the facts and circumstances shown and thus the court was not clearly wrong. In any event, in the light of the evidence adduced by the State, proof that appellant or his brother or the phantasmagoric Tony [5] had been given permission to enter would go at most to explaining the possession of the goods and the burden of so showing would be on appellant. It was not necessary that the State establish by direct evidence that the owner had not given permission to enter his dwelling.

*Judgments affirmed; costs to be paid by appellant.*

---

5. Asked if Tony were white or colored, William Martin said, "He's sort of mixed like * * * like he's Spanish. He acted foreign, in the sense of Negro, you know, like he's kind of slick * * * like a jitterbug or something like that." He did not know his last name, address or whereabouts.