**Pete Mundo GARCIA, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1283S429.**

Supreme Court of Indiana.

June 7, 1984.

Itsia D. Rivera, Rivera, Schlesinger & de la Torre, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted of Burglary, a Class B felony, and Rape, also a Class B felony. Appellant waived his right to trial by a jury and was tried by the court. The court sentenced appellant to twelve (12) years on each count. The sentences to run concurrently.

The facts are these: On May 29, 1982, appellant attended a birthday party at the Calumet Social Club on Calumet Avenue in Hammond. At this party he consumed approximately twelve beers. At approximately 12:00 that evening, he left the party accompanied by his brother. On the way home appellant's brother got out of the car after arguing about appellant's poor driving. Appellant continued on his way home but entered a road which was flooded where he became stuck. The driver of a truck attempted to pull appellant's car out of the hole but was unsuccessful. The truck driver refused to give appellant a ride.

Appellant, who was soaking wet from the waist down, walked to a nearby trailer park. By this time it was approximately three in the morning of May 30, 1982. A Mrs. Margaret Starke answered appellant's knock on her trailer door. After he explained his problems, she dialed appellant's sister on the telephone and handed the phone out her chained trailer door to allow appellant to converse with his sister.

Appellant then returned to a position to wait for his sister's arrival. However, when she did not come within the time he thought she should, he returned to the trailer park to make another phone call. Appellant knocked on the door of another trailer but no one answered. He looked inside through a window and saw a woman mopping the floor. Appellant removed the trailer's window, unlatched the door and entered.

Once inside the trailer, appellant asked the occupant, M.D.H., if he could use the phone. M.D.H. is a deaf-mute and could not respond to appellant's spoken word. Appellant then removed his trousers and asked M.D.H. to dry them. Appellant then raped M.D.H. once on a couch in the front part of the trailer and again on the bed in the back part of the trailer. M.D.H. effected her escape when appellant fell asleep on her bed. Police were summoned and arrested appellant who was still asleep on the bed.

Appellant first claims the evidence is insufficient to establish the element of penetration beyond a reasonable doubt. He bases his contention on the fact that the victim was a deaf-mute and that her testimony through an interpreter was somewhat confusing concerning the process of sexual intercourse. One Paula Shrum act-

ed as the sign language interpreter in this case. She stated to the court that she would attempt to make a word-for-word literal translation of the proceedings, but at times that is impossible because of the lack of availability of a sign for a particular word. Through the interpreter the victim indicated when appellant entered her trailer by force she attempted to induce him to leave, but he refused. He forced her to have sex and pushed her on her face. He removed her clothes and her pants. The victim indicated that her vagina was involved in the rape and that the appellant put part of his body inside her body. She said that the boy (meaning the appellant) had sex with his body, from her, and that she did not like that. She stated that appellant laid on top of her, and that his body went into her body on the sofa. She stated that he repeated this act in the bedroom.

When faced with the responsibility of prosecution, the prosecutor does not always have an ideal situation. The law has to recognize reasonable variations in the eliciting of proof from witnesses, taking into consideration various incapacities. The fact that the victim in this case was a deaf-mute, whose communication through an interpreter was not in the terminology one would expect from a person who can hear and testify directly to questioning, does not render her testimony any the less understandable. Certainly any person of normal intelligence could understand the meaning of the victim's testimony.

Although the uncorroborated testimony of the victim is sufficient to support a rape conviction, *Tillman v. State*, (1980) Ind., 408 N.E.2d 1250, there is in this case corroborating testimony, in that when the victim was examined at the hospital following the alleged rape, she was found to be bruised and swollen about the vaginal area and had a white fluid in that area.

There is ample evidence in the record before us to support the trial court's finding that penetration did, in fact, occur against the will of the victim.

Appellant claims the trial court erred in finding that the appellant was guilty of burglary in that there was no showing that he intended to commit a felony at the time he entered the trailer. Intent to enter to commit a felony may be inferred from circumstances. *Sleck v. State*, (1977) 175 Ind.App. 22, 369 N.E.2d 963. It is appellant's contention that he entered the trailer simply because he was wet and cold and seeking shelter. However, he admits he did not request entrance to the trailer but forced his way in. He admitted hitting the victim and threatening her with rape after he entered the trailer. There was no appreciable lapse of time between the forced entry into the trailer and appellant's attack upon the victim. This evidence when taken together is ample to support the finding of the trial court that appellant formed the intent to rape the victim when he observed her mopping the floor through the window of her trailer, and that he immediately set about the process of accomplishing his purpose.

The trial court is in all things affirmed.

All Justices concur.