560 A.2d 1104

Kevin **REED**

v.

**STATE of Maryland.**

**No. 58, Sept. Term, 1987.**

Court of Appeals of Maryland.

July 21, 1989.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ELDRIDGE, Judge.

On a July night, at 4:00 a.m., the Petitioner Kevin Reed and his brother came to the locked door of the lobby of a Baltimore City apartment complex housing retired and disabled senior citizens. Among the residents of the complex was Ellis Reed, Kevin Reed's father. Under the rules of the apartment complex, only residents were admitted to the building between 1:00 a.m. and 7:00 a.m. When Kevin Reed and his brother reached the locked outside door of the apartment complex, the guard on duty in the lobby, Ms. Payne, saw them through the glass in the door and went up to the door. Kevin Reed and his brother told Ms. Payne that they wished to visit their father, that their mother had died, and that they wanted to inform their father of her death. Ms. Payne unlocked and opened the door. She allowed them to enter the building and had them sign the registry book. She then escorted Kevin and his brother to their father's apartment, 13K, where they knocked on the door and were admitted. Ellis Reed testified that when his sons arrived he told them to mop his floor and that they did so.

Charles Keller was a resident of the same apartment complex, in apartment 13L. On the night Kevin Reed and his brother were visiting Ellis Reed, Mr. Keller was asleep with his apartment door open in order to increase ventilation. At 4:30 a.m. Mr. Keller awoke and saw Kevin Reed and his brother running from Mr. Keller's apartment. Mr. Keller then determined that a bank credit card, a food

emergency identification card, and $130.00 in cash were missing from his apartment. Shortly afterwards, Kevin Reed and his brother returned to the lobby, signed out, and left the building. Mr. Keller called the police who later brought Kevin Reed and his brother to Mr. Keller's apartment where he identified them as the men fleeing his apartment earlier. The bank card, the emergency food identification card, and $118.00 in cash were found in Kevin Reed's home.

Kevin Reed was charged in the Circuit Court for Baltimore City with burglary,[1] and he elected a nonjury trial. At the trial, Ellis Reed, the defendant's father, testified that the defendant's mother was alive. The trial judge found the defendant guilty of burglary and sentenced him to five years imprisonment. The Court of Special Appeals affirmed in an unreported opinion, and this Court granted the defendant's petition for a writ of certiorari.

The defendant Kevin Reed argues that his conviction should be overturned because the State failed to prove the requisite elements of burglary. Specifically, Reed claims (1) that there was no breaking, (2) that the lobby of the complex was not a dwelling, and (3) that even if there was a breaking into a dwelling, the defendant lacked the necessary intent at the time of the breaking.

In contending that there was no breaking of Mr. Keller's apartment, the defendant relies on the settled principle that entry through an open door is not a breaking. *See Dorsey v. State,* 231 Md. 278, 189 A.2d 623 (1963); *Ridley v. State,* 228 Md. 281, 179 A.2d 710 (1962); *Reagan v. State,* 2 Md.App. 262, 268, 234 A.2d 278, 281 (1967). *See also*

---

1. Common law burglary is "[t]he breaking and entering of the dwelling house of another by night with intent to commit a felony," *State v. Davis,* 310 Md. 611, 617, 530 A.2d 1223 (1987). Under Art. 27, § 29, it is punishable by imprisonment for not more than 20 years. "Common law burglary has been enlarged by [Art. 27,] § 30(a) to include in the felony of statutory burglary an intent to steal goods of less than $300." *State v. Davis, supra,* 310 Md. at 617, 530 A.2d at 1226. The penalty for statutory burglary is the same as for common law burglary. *See Reagan v. State,* 4 Md.App. 590, 594, 244 A.2d 623 (1968).

*Sample v. State,* 33 Md.App. 398, 400–403, 365 A.2d 773 (1976). The State argues that there was a constructive breaking by the defendant when he gained admittance to the building by lying about his mother's death.

At common law, a constructive breaking occurred "when entry was gained by fraud or threat of force." 2 Lafave and Scott, *Substantive Criminal Law,* § 8.13 (1986). The notion of constructive breaking was recognized by this Court in *Brooks v. State,* 277 Md. 155, 159–160, 353 A.2d 217, 220 (1976):

> "[T]he term 'breaking' may be satisfied where ... the breaking occurred 'constructively,' through an entry gained by artifice, 'by fraud, [by] conspiracy (with those within) or [by] threats.'"

The defendant maintains that his entry was not a constructive breaking because he and his brother sought entry in order to visit their father, that Ms. Payne allowed them in for the purpose of seeing their father, and that they did in fact visit their father. The defendant asserts that the entry was not gained by fraud, even though the reason given for wanting to visit Ellis Reed was false. The defendant cites *Reagan v. State, supra,* 2 Md.App. at 267–268, 234 A.2d at 281, that "the breaking, actual or constructive, requires a break of the dwelling by trespass" and that an entry is not a breaking "if the one entering had authority to do so at that particular time." *See also Finke v. State,* 56 Md.App. 450, 467, 468 A.2d 353, 362 (1983), *cert. denied,* 299 Md. 425, 474 A.2d 218, *cert. denied,* 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984); *Martin v. State,* 10 Md.App. 274, 279, 269 A.2d 182 (1970).

Generally, in constructive breaking cases where defendants have gained entry by claiming to have a lawful objective, upon gaining entry the defendants have turned out to have no such lawful objective. *See, e.g., Com. v. Hayes,* 314 Pa.Super. 112, 460 A.2d 791 (1983) (defendant gained entry by falsely claiming that he had come to read the meter in the basement, then burglarized house); *State v. Van Meveren,* 290 N.W.2d 631 (Minn.1980) (defendant

gained entry claiming that he needed to use the bathroom and immediately, after gaining entry, commenced assault); *State v. Maxwell,* 234 Kan. 393, 672 P.2d 590 (1983) (after gaining entry into antiques dealer's home on the pretext of wanting to discuss a watch, the defendant robbed the occupants). In this case, while Kevin Reed was not truthful about the reason for wanting to visit his father, he did gain entry in order to visit his father, and, for some time after being admitted, he did in fact visit his father.

Alternatively, the defendant contends that even if there was a constructive breaking, a constructive breaking of the lobby of the apartment complex fails to satisfy the requirement that the breaking be of a dwelling house. The common law limitation of burglary to breaking into a dwelling house "found its theoretical basis in the protection of man's right of habitation." Lafave and Scott, *supra* § 8.13.

The defendant relies on *Herbert v. State,* 31 Md.App. 48, 52, 354 A.2d 449, 451 (1976), for the proposition that "[n]ot every room of a multiple unit 'dwelling-house' need be classified as a dwelling." The defendant also points to cases in which various parts of multiple unit buildings were held not to be dwellings. *See Arnold v. State,* 7 Md.App. 1, 252 A.2d 878 (1969) (basement of an apartment building, used for storage, was not a dwelling); *Poff v. State,* 4 Md.App. 186, 189, 241 A.2d 898 (1968) (stating that "the test as to whether or not a building is a 'dwelling house' is whether or not it is used regularly as a place to sleep" and holding that a vacant apartment used for storage is not a dwelling); and *Jones v. State,* 2 Md.App. 356, 234 A.2d 625 (1967) (holding that proof of entry into a building containing both a business and an apartment was not sufficient to warrant conviction for burglary).

The State, on the other hand, points to *Herbert v. State, supra,* 31 Md.App. at 52, 354 A.2d at 451, for the statement that "a hotel is a dwelling house even if all the inmates are transients, and the proprietor and his family and servants all sleep elsewhere," (quoting Perkins, *Criminal Law,* Ch. 3, § 1, p. 207 (2d ed. 1969). The State argues that because

the entire complex consisted of residences, and the common areas connecting them, the entire building including the lobby should be considered a dwelling. The parties cite no cases which specifically consider whether the lobby of an apartment complex qualifies as a dwelling-house for purposes of a burglary prosecution. *But see Escarino v. State,* 122 Tex.Cr. 341, 55 S.W.2d 565, 566 (Ct.Crim.App. Tex.) (1932) (holding that entry into a room used as a hotel office, but connected with rooms used for sleeping and living, did not permit conviction for "burglary of a private residence").

The defendant's arguments that there was no constructive breaking and that the lobby was not a "dwelling" have much force. Nevertheless, we shall not resolve these difficult issues at this time. In our view, even if there were a breaking of a dwelling-house, there was in this case insufficient evidence that the defendant had the requisite intent at the time of the breaking.

In reviewing whether evidence is sufficient to support a conviction, the standard to be applied is " 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' " *Johnson v. State,* 303 Md. 487, 510, 495 A.2d 1, 13 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560, 573 (1979)).

To warrant a burglary conviction, the defendant must have had, at the time of the breaking, an intent to commit a felony or theft under $300. "[I]n burglary there must be a felonious intent at the time of the breaking and entering, and it is not burglary if the intent is formed after the breaking and entering are completed." Burdick, *Law of Crime,* § 710 (1st ed. 1946). A number of Maryland cases in similar contexts have held that the intent at the time of the breaking controls. *See, e.g., Pearre v. State,* 237 Md. 622, 624, 206 A.2d 249 (1965); *Ridley v. State, supra,* 228 Md. 281, 282, 179 A.2d 710; *Sample v. State, supra,* 33

Md.App. at 404, 365 A.2d at 777; *Makins v. State*, 6 Md.App. 466, 474, 252 A.2d 15, 20 (1969).

This Court has stated that "[f]inding the requisite intent to steal is ... never a precise process for intent is subjective, and it must therefore be inferred from the circumstances of the case if it is found at all." *Yopps v. State*, 234 Md. 216, 220–221, 198 A.2d 264, 266, *cert. denied*, 379 U.S. 922, 85 S.Ct. 279, 13 L.Ed.2d 336 (1963). We have also said that "[t]he most conclusive evidence that the breaking was with the intent to steal is the larceny itself." *Felkner v. State*, 218 Md. 300, 307, 146 A.2d 424, 429 (1958).

The circumstances of the instant case, however, do not permit the conclusion that because Kevin Reed stole Mr. Keller's goods his intent when entering the building was to commit a crime. Several factors militate against this conclusion. The breaking in this case was, at best, a constructive breaking. A surreptitious or forceful breaking would more strongly suggest criminal intent. Although the defendant lied at the time he gained entry, his statement was not completely misleading. It would be as reasonable to infer that he lied in order to see his father as to infer that he lied in order to commit a crime. The defendant's use of his real name when signing into the building suggests that he lacked criminal intent at that point. The thirty minute lapse of time between the defendant's entry into the lobby and the theft of Mr. Keller's possessions also suggests that the defendant had no criminal intent upon entry. Additionally, the way in which the defendant spent those thirty minutes —mopping his father's floor—indicates no criminal intent at the time of entry. The lapse of time between a breaking and a subsequent crime has been considered as significant evidence of no criminal intent upon breaking. *See, e.g., Garcia v. State*, 463 N.E.2d 1099, 1101 (Ind.1984); *Bonds v. State*, 436 N.E.2d 295, 297 (Ind.1982).

Perhaps most significant is the lack of any evidence that Kevin Reed, when entering the building, was aware that Mr. Keller's door would be open. This strongly suggests that the defendant's criminal intent was not present until

inspired by the chance encounter with Mr. Keller's open door. These factors lead us to conclude that there was insufficient evidence for the trial judge to find that Kevin Reed entered the apartment building with the intent to commit a crime.

In *Reed v. State*, 7 Md.App. 200, 253 A.2d 774 (1969), the Court of Special Appeals reversed a conviction because there was insufficient evidence of intent to warrant the conclusion that the defendant had attempted to enter a home "with the intent to steal goods therefrom." 7 Md. App. at 204, 253 A.2d at 776. The court found a lack of intent based on the defendant's non-surreptitious behavior prior to the attempted entry (ringing the doorbell before pushing on the door) and the defendant's plausible, non-larcenous reason for attempting entry ("to gain some revenge or satisfaction from having been turned down by [a] young lady"). The instant case has similar features—a public and relatively unsuspicious entry as well as a plausible, lawful reason for entering. *See People v. Coleman*, 130 Mich. App. 639, 644–645, 344 N.W.2d 30, 33 (1983) ("the necessary connection between the breaking and entering and the intent to steal is missing and, for that reason, we reverse and remand to permit the defendant to withdraw his plea of guilty"). *See also Washington v. State*, 268 Ark. 1117, 599 S.W.2d 408 (Ark.App.1980).

We hold that the evidence was insufficient in this case for the trier of fact to find that the defendant Kevin Reed had a criminal intent at the time he entered the lobby of the apartment complex.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.