570 A.2d 354

**Raymond Lester HORSMAN, III**

v.

**STATE of Maryland.**

**No. 925 Sept. Term, 1989.**

Court of Special Appeals of Maryland.

March 2, 1990.

100

M. Albert Figinski and Stuart R. Berger, Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Argued before ALPERT, BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

On March 28, 1989, Raymond Lester Horsman III, the appellant, was convicted at a bench trial in the Circuit Court for Anne Arundel County of attempted daytime housebreaking with intent to steal. Md.Code Ann., Art. 27, § 30(b). Appellant was sentenced on June 19, 1989, to 25 years without the possibility of parole mandated by Md. Code Ann., Art. 27, § 643B(c). On appeal from that judgment, appellant asks:

I. Was appellant's waiver of his right to a jury trial knowing, intelligent, and voluntary when, at that time, appellant was not aware of the mandatory sentence he could receive upon conviction?

II. Did the State violate appellant's due process rights and his right to effective assistance of counsel by not notifying appellant prior to trial of its intention to seek a mandatory sentence under Md.Code Ann., Art. 27, § 643B(c)?

III. Is appellant's mandatory sentence of 25 years without parole prohibited by the Eighth Amendment of the United States Constitution and Article 25 of Maryland Declaration of Rights?

IV. Did the court err in concluding that there was sufficient evidence to find that appellant attempted to commit a breaking and entering under Md.Code Ann., Art. 27, § 30(b)?

We shall address each of these issues in turn after briefly recounting the facts which gave rise to appellant's prosecution.

On September 22, 1988, Sharon Totten (Totten), a resident of 211 Twelfth Avenue in Brooklyn Park, heard her dog barking at approximately 10:30 a.m. Looking out of her window, Totten observed the following sequence of events at her neighbor's house at 301 Twelfth Avenue. A person, whom she later identified as the appellant, knocked at her neighbor's door, sat down on a picnic table on the patio, and then knocked again. (Pry marks were noticed around the door after the incident.) When there was no response, appellant walked to the back yard of 301 Twelfth Avenue. He ran his hand along the bottom ledge of the dining room windows at the rear of the house. (After the incident it was observed that the screen on one of these windows had been forced open.) At this point Totten telephoned 911 to report what she perceived to be an attempted breaking and entry. Then, Totten saw appellant pick up a crowbar which was on the patio and go to a basement window. Appellant used the crowbar in attempting to open the window. When he was unsuccessful in that attempt, Totten observed appellant using his foot to try to break the glass in that window. Totten heard the glass break.

About that time Detective James Baublitz of the Anne Arundel County Police Department arrived in response to Totten's 911 call. As he pulled up, he saw appellant in a crouched position in the yard at 301 Twelfth Avenue. As he got out of his car, Detective Baublitz saw appellant get up and flee through the woods next to those premises. When Detective Baublitz was unable to catch up with appellant, he broadcast appellant's description and the reported breaking and entry. Appellant was apprehended by other Anne Arundel police officers shortly thereafter.

## I.

When he appeared for trial, appellant elected to waive his right to a jury trial. Appellant's trial counsel,

Timothy Murnane, Esq. (Murnane), questioned appellant on the record to ascertain if he understood the full import of this waiver. Murnane asked appellant if he understood that a jury would consist of 12 people selected from the voters' roll of Anne Arundel County and further, that appellant and Murnane had a right to participate in the jury's selection. Murnane also instructed appellant that all of the jurors had to find him guilty "... beyond a reasonable doubt and to a moral certainty." Appellant responded that he understood these rights. Next, Murnane asked appellant his age and how far appellant had gone in school. Appellant responded that he was 24 years old and that he had received a G.E.D. Finally, Murnane asked appellant if he was "... under the influence of any alcohol, drugs, narcotics or anything that would prevent you [him] from understanding ..." anything about the trial and if he had any questions at all about the difference between proceeding with a court trial instead of with a jury trial. Appellant responded in the negative to these questions.

Under Rule 4–246(b), a court may not accept a waiver of jury trial until the accused has been questioned on the record, and the court determines that "... the waiver is made knowingly and voluntarily." Even though appellant was questioned on the record by his counsel as to his understanding of the jury trial waiver, he argues that his waiver was not "knowing" and "voluntary" because he was not apprised at that time of the maximum sentence which he was facing under Md.Code Ann., Art. 27, § 643B(c).

The Court of Appeals has commented on what is required by Rule 4–246(b):

> In determining whether the defendant has knowingly and voluntarily waived his right to a jury trial, the questioner need not recite any fixed incantation. Whether there is an intelligent, competent waiver must depend on the unique facts and circumstances of each case. However, the court must be concerned that the waiver is not a product of duress or coercion. Furthermore a defendant

must have some knowledge of the jury trial right before he is allowed to waive it.

*Martinez v. State,* 309 Md. 124, 134, 522 A.2d 950 (1987) (citations omitted). The interrogation of appellant by his counsel met these requirements. There was no evidence that appellant's waiver resulted from coercion or duress, and he was given an adequate explanation of the right to a jury trial. We reject appellant's argument that before he could knowingly waive a trial by jury he should have been advised of the maximum punishment he was facing if convicted of the crimes with which he was charged. Appellant correctly observes that such information must be provided an accused before his plea of guilty may be accepted by the court. Rule 4–242 requires that the court determine before accepting a guilty plea that the defendant understands "the consequences of the plea." *Bryant v. State,* 47 Md.App. 551, 555, 424 A.2d 1115 (1981). Contrary to the situation with a jury trial waiver, sentencing is a consequence of the acceptance of a guilty plea. Sentencing, however, is not a consequence of the election to waive a jury trial.

## II.

The prosecutor did not notify appellant until 18 days before his sentencing that the State intended to seek the mandatory sentence under Md.Code Ann., Art. 27, § 643B(c),[1] notwithstanding the fact that the prosecutor

---

**1.** (c) *Third conviction of crime of violence.*—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion.

was aware of appellant's prior convictions as early as five months before the trial.[2] Appellant argues that the State should have informed him of its decision to pursue the § 643B mandatory sentence prior to his trial and that its failure to do so denied him due process and prevented his counsel from rendering effective assistance to him at his trial. We are not persuaded. Md.Code Ann., Art. 27, § 643B(d) provides:

> (d) *Compliance with Maryland Rules.* If the State intends to proceed against a person as a subsequent offender under this section, it shall comply with the procedures set forth in the Maryland Rules for the indictment and trial of a subsequent offender.

The notice required before mandatory penalties may be imposed is specified in Rule 4–245(c):

> When the law prescribes a mandatory sentence because of a specified previous conviction, the State's Attorney shall serve a notice of the alleged prior conviction on the defendant or counsel at least 15 days before sentencing in circuit court or five days before sentencing in District Court.

*Loveday v. State,* 296 Md. 226, 462 A.2d 58 (1983) is dispositive of appellant's contention that although the notice given him by the State complied with Rule 4–245(c), he was denied due process because he was not given such notice prior to his trial. In *Loveday* the accused rejected a proposed plea agreement under which the State would have made no recommendation as to sentence if he pleaded guilty to robbery thereby exposing himself to a ten year sentence. The case was tried, and Loveday was convicted of robbery.

---

2. On October 23, 1984, appellant was convicted of daytime housebreaking in the Circuit Court for Anne Arundel County. He was sentenced to five years of incarceration in the Division of Correction with all but two years of the sentence suspended.

On September 1, 1988, appellant was convicted of two counts of daytime housebreaking in the Circuit Court for Howard County. He was sentenced to five years of incarceration in the Division of Correction with all but 237 days suspended.

Thereafter, he was notified by the State that it would seek the 25 year sentence mandated by Art. 27, § 643B(c). Loveday contended that he was denied due process by the State's failure to advise him during plea negotiations of its intention to seek a mandatory sentence of 25 years if he rejected the State's offer of a plea agreement. The Court of Appeals disagreed, explaining:

> In the case *sub judice*, Loveday's exposure to a mandatory sentence depended upon whether the State could convict him a third time for a crime of violence. It was only upon the happening of this event that he became entitled to notice which he duly received. While undoubtedly such notice was traumatic to Loveday, the constitutionality of inflicting more severe penalties upon habitual offenders is no longer open to challenge.

*Id.* at 237–38, 462 A.2d 58, *citing Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), *cert. denied*, 375 U.S. 885, 84 S.Ct. 160, 11 L.Ed.2d 115 (1963). The Court quoted from *Graham v. West Virginia*, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912), in support of its holding:

> 'Although the State may properly provide for the allegation of the former conviction in the indictment, for a finding by the jury on this point in connection with its verdict as to guilt and thereupon for the imposition of the full sentence prescribed, *there is no constitutional mandate which requires the State to adopt this course even where the former conviction is known. It may be convenient practice, but it is not obligatory.* This conclusion necessarily follows from the distinct nature of the issue and from the fact, so frequently stated, that it does not relate to the commission of the offense, but goes to the punishment only, and therefore it may be subsequently decided.' [*Id.* at 627, 32 S.Ct. at 587 (emphasis added.) ]

*Id.* 296 Md. at 238–39, 462 A.2d 58.

Appellant fares no better with his argument that because he was not notified prior to trial of the State's intention to seek a mandatory sentence, he did not receive effective

assistance from his trial counsel. To support this claim, appellant points to his trial counsel's statement at the sentencing hearing that he would have handled the case differently if appellant had received pretrial notice of the State's plan. Trial counsel did not advise the court what he would have done differently. In this direct appeal the record furnishes no support for the contention that appellant's trial counsel was deficient in his performance thereby prejudicing appellant's defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984), *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *Harris v. State,* 303 Md. 685, 695–96, 496 A.2d 1074 (1985).

### III.

■ Appellant contends that his mandatory sentence to 25 years without parole constitutes cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution and Article 25 of the Maryland Declaration of Rights. He posits that the sentence is disproportionate to his crime of attempted daytime housebreaking when the nonviolent nature of his conduct is considered. His argument is not novel and has no merit. *Minor v. State,* 313 Md. 573, 583–84, 546 A.2d 1028 (1988); *State v. Davis,* 310 Md. 611, 629, 530 A.2d 1223 (1987); *Middleton v. State,* 67 Md.App. 159, 167, 172, 506 A.2d 1191 (1986), *cert. denied,* 308 Md. 146, 517 A.2d 771 (1986); *Teeter v. State,* 65 Md.App. 105, 117–19, 499 A.2d 503 (1985); *Bryan v. State,* 63 Md.App. 210, 219–220, 492 A.2d 644 (1985), *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985).

### IV.

■ Finally, appellant contends that the State failed to prove the requisite "intent to steal" necessary to support his conviction for attempted daytime housebreaking under Md.Code Ann., Art. 27, § 30(b) which provides:

Any person, his aiders, abettors and counsellors, who shall be convicted of the crime of breaking a dwelling

> house in the daytime with intent to commit murder or felony therein, or with intent to steal, take or carry away the personal goods of another of any value therefrom, shall be guilty of a felony, and upon conviction thereof, shall be sentenced to the penitentiary for not more than ten years.

He asserts that *Reed v. State*, 7 Md.App. 200, 253 A.2d 774 (1969), supports his position.

In *Reed* the defendant was convicted after a nonjury trial of attempted housebreaking with intent to steal. The evidence revealed that he had gone to the home of his ex-girl-friend, Shirley Phillips, at 1:30 a.m. During the preceding few days, the defendant had physically assaulted his ex-girl-friend, threatened her mother, and damaged her father's automobile, and he was suspected of setting a fire in the basement of their home. When he arrived at the front door, he rang the doorbell. When no one responded, he pushed against the door. Mrs. Phillips heard the noise and awakened Mr. Phillips who got his pistol and fired several shots through the closed front door. The defendant, who was struck by several of those shots, testified that his purpose in going to the Phillips's home that evening was to ask them not to press charges on a warrant which they had obtained for his arrest. Under these circumstances we held that the trial judge was clearly erroneous in finding that the defendant harbored an intent to steal "... particularly since he found as a fact that ... [the defendant's] purpose in attempting entry was 'to gain some revenge or satisfaction from having been turned down by the young lady'." *Id.* at 204, 253 A.2d 774.

In an unrelated case which bears the same name, *Reed v. State*, 316 Md. 521, 560 A.2d 1104 (1989), the Court of Appeals held that there was insufficient evidence before the court in a nonjury trial to support a finding that the defendant possessed the requisite criminal intent to commit burglary. That evidence showed that at 4:00 a.m. the defendant went to an apartment complex where his father resided. He falsely advised the guard at the front door that

his mother had died and that he had come to advise his father of her death. After the defendant signed the register in the lobby the guard escorted him to his father's apartment. When the defendant arrived, he mopped the apartment floor at his father's request. At 4:30 a.m., appellant entered an open door in a nearby apartment and stole cash and other property from the occupant thereof, a Mr. Keller. Thereafter, he returned to the lobby of the apartment complex, signed out, and left.

The Court explained its rationale:

The circumstances of the instant case, however, do not permit the conclusion that because Kevin Reed stole Mr. Keller's goods his intent when entering the building was to commit a crime. Several factors militate against this conclusion. The breaking in this case was, at best, a constructive breaking. A surreptitious or forceful breaking would more strongly suggest criminal intent. Although the defendant lied at the time he gained entry, his statement was not completely misleading. It would be as reasonable to infer that he lied in order to see his father as to infer that he lied in order to commit a crime. The defendant's use of his real name when signing into the building suggests that he lacked criminal intent at that point. The thirty minute lapse of time between the defendant's entry into the lobby and the theft of Mr. Keller's possessions also suggests that the defendant had no criminal intent upon entry. Additionally, the way in which the defendant spent those thirty minutes—mopping his father's floor—indicates no criminal intent at the time of entry.

．　　．　　．　　．　　．

Perhaps most significant is the lack of any evidence that Kevin Reed, when entering the building, was aware that Mr. Keller's door would be open. This strongly suggests that the defendant's criminal intent was not present until inspired by the chance encounter with Mr. Keller's open door. These factors lead us to conclude that there was insufficient evidence for the trial judge to

find that Kevin Reed entered the apartment building with the intent to commit a crime.

In *Reed v. State*, 7 Md.App. 200, 253 A.2d 774 (1969), the Court of Special Appeals reversed a conviction because there was insufficient evidence of intent to warrant the conclusion that the defendant had attempted to enter a home 'with the intent to steal goods therefrom.' 7 Md.App. at 204, 253 A.2d at 776. The court found a lack of intent based on the defendant's non-surreptitious behavior prior to the attempted entry (ringing the doorbell before pushing on the door) and the defendant's plausible, non-larcenous reason for attempting entry ('to gain some revenge or satisfaction from having been turned down by [a] young lady'). The instant case has similar features—a public and relatively unsuspicious entry as well as a plausible, lawful reason for entering.

*Id.* 316 Md. at 527–28, 560 A.2d 1104.

We believe the case *sub judice* is distinguishable from both *Reed* cases, *supra.* Here, the evidence revealed that appellant made three distinct attempts to break and enter the dwelling house after assuring himself that it was unoccupied. Appellant had no relationship with the residents of the house. No non-larcenous reason for that attempted entry was disclosed to the court. When we view these circumstances in the light most favorable to the prosecution, we hold that there was sufficient evidence from which the court, as the trier of fact, could rationally infer that appellant possessed the intent to steal when he attempted to break into the dwelling. *Tichnell v. State*, 287 Md. 695, 717, 415 A.2d 830 (1980).

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.